On Application for Rehearing

THOMPSON, Judge.
The opinion of September 22, 2000, is withdrawn, and the following is substituted therefor.
The plaintiff Arthur Curtis Baker appeals from a judgment entered on jury verdicts in favor of the defendants Letica Corporation and Glidden Company, Inc., on his claims alleging common-law negligence and his claims alleging liability pursuant to the Alabama Extended Manufacturer’s Liability Doctrine (“AEMLD”). We affirm.
In his complaint filed against Glidden, the paint manufacturer, and Letica, the bucket manufacturer, Baker alleged that, on August 23, 1996, while he was performing his duties as maintenance supervisor for Olympiad Apartments, he injured his foot. Baker explained that he had gone to the storage room to check the swimming-pool pump and found, stacked in the doorway, three five-gallon paint buckets, which he said he attempted to move out of the way. Baker claims that as he moved a bucket, the handle on the bucket came loose and the bucket fell on his left foot. No one witnessed Baker’s accident.
The paint had apparently been ordered in preparation for repainting some of the apartments. Larry Strichik, the painter for Olympiad Apartments, testified at trial that, on the date of the accident, he entered the storage room and found a bucket that had no handle; he said he picked it up and carried it sideways to his truck and there emptied the paint from that bucket into his own bucket. Some doubt was cast on the credibility of Strichik’s testimony, however. On cross-examination, Strichik admitted that he might have given a different version of events in a recorded statement to a representative for Glidden. Strichik admitted on cross-examination that he might have told the Glidden representative that he had never seen a paint bucket without a handle in the storage room. When asked to reconcile the discrepancies in the two versions, Strichik explained that he often lied when talking on the phone to people he did not know. Strichik testified at trial that after he completed his painting for the day, he disposed of the bucket that had fallen on Baker’s foot, by placing it in the garbage.
Baker[1] testified that the handle came off the bucket when he lifted it and that the bucket dropped onto his foot before landing upright on the floor. On cross-examination, Baker explained that he had, by a telephone conversation on the date of the accident, related the events surrounding the accident to Lynn Iceon, the assistant manager at the Olympiad Apartments, to enable her to complete an accident report. Baker read into the record from the accident report the following version of the accident: “Moving five-gallon paint bucket and one dropped from another bucket onto the left foot.” Baker testified that he had not told Iceon that the accident happened that way, and he *1144 said he did not know why she had recorded the events in that way on her report.
Baker testified that, immediately after the accident, he noticed that his foot was bleeding and that he treated his injury with an antibiotic ointment and a bandage, before going home for the day. Baker and his wife both testified that Baker is diabetic and manages to control his blood sugar with oral medication and by diet. Five days after the accident, Baker sought advice from a friend, Dr. R.G. Love, an ear, nose, and throat specialist. Dr. Love testified at trial that when he examined Baker’s foot, he noticed that two of the toes were blackened. Dr. Love immediately referred Baker to an orthopedic surgeon, who recommended amputation of Baker’s foot. Baker sought a second opinion from another orthopedic surgeon, who promptly amputated two toes. Baker has subsequently undergone a number of successive surgeries resulting in amputation of a portion of his left leg to a point just above the knee.
In February 1998, Baker sued Letica, the bucket manufacturer; Glidden, the paint manufacturer; and Charlie Rogers, a Glidden distributor, alleging claims based upon the AEMLD and alleging negligent or wanton design, manufacture, sale, or distribution of the five-gallon paint bucket. Glidden, Rogers, and Letica filed motions for summary judgment. The trial court entered a summary judgment in favor of Glidden and Rogers on Baker’s claims of negligent and wanton delivery and placement of the paint buckets.[2] The matter proceeded to a jury trial on all of Baker’s remaining claims. Following a two-day trial, the jury returned a verdict in favor of Letica and Glidden. The trial court entered a judgment on that verdict. Following the denial of his postjudgment motion, Baker appealed to the supreme court; that court transferred the appeal to this court pursuant to -Ala.Code 1975, § 12-2-7(6).
The sole issue raised by Baker on appeal is whether the evidence warranted the trial court’s charging the jury regarding spoliation of evidence. Baker claims that, because no evidence was adduced at trial to give rise to the inference that he intentionally disposed of the evidence, the trial court’s charge on spoliation of evidence was error and grounds for reversal.
During her instructions to the jury, the judge gave the following instruction:
“Now, in this case, defendants also claim that the plaintiff was guilty of wrongfully destroying or disposing of material evidence, which was the paint bucket in issue. If you’re reasonably satisfied from the evidence that plaintiff did or attempted to wrongfully destroy or dispose of such evidence, then that fact may be considered in your deliberations concerning the validity of plaintiffs claims.”
Counsel for Baker properly preserved the issue of the propriety of the instruction on spoliation for appeal, by objecting to the instruction before the jury retired to deliberate. See Rule 51, Ala. R. Civ. P. In his postjudgment motion, Baker raised the issue of the impropriety of that jury charge, seeking a new trial as relief for the alleged error. The trial court denied his motion, citing as authority Alabama Power Co. v. Murray, 751 So.2d 494 (Ala.1999).
A litigant in a jury trial is entitled to try his or her case before a jury that has been properly instructed on the applicable rules of law. Brooks v. Winn-Dixie of Montgomery, Inc., 716 So.2d 1203 *1145 (Ala.Civ.App.1997). Although a trial court has considerable discretion in charging a jury, an incorrect or misleading charge may be a proper basis for granting a new trial. Nunn v. Whitworth, 545 So.2d 766 (Ala.1989). Our supreme court has held, however, that “in order for a jury instruction to constitute reversible error, it must not only be erroneous, but must also be prejudicial.” Brabner v. Canton, 611 So.2d 1016, 1018 (Ala.1992). Baker contends that, because there is no evidence that he intentionally tampered with or actively concealed the allegedly defective paint bucket that he claimed caused his injury, the evidence in the record does not support the charge of spoliation given by the trial court.
In Alabama Power Co. v. Murray, supra, the supreme court affirmed the giving of a charge on spoliation of evidence. In that case, a power-surge arrester, which Alabama Power Company claimed was defective and was the cause of the fire that destroyed the plaintiffs’ home, was dropped and shattered during the course of an inspection by a power company employee. Although there was no evidence that the power company worker had deliberately destroyed the surge arrester, the supreme court found that the instruction on spoliation was proper, reasoning that the surge arrester was vital to the plaintiffs’ case and that Alabama Power Company had reason to know the importance of the evidence when it was inspecting it. These facts, the supreme court reasoned, combined with the inconsistent testimony of two Alabama Power Company engineers and the fact that other neighbors in the area had also reported a power surge that had destroyed electrical appliances in their home, provided a sufficient foundation for the trial court’s jury charge on the doctrine of spoliation. Id. at 497.
In the present case, Baker’s own credibility is not flawless; he has a criminal record, and the accident report[3] filed on his behalf pertaining to the incident reflects a different version of events.
Strichik, the painter who ultimately disposed of the paint bucket, also related inconsistent versions when he described the condition in which he found the paint bucket. In his testimony at trial, he stated that he found the bucket upright on the floor and saw the handle beside the bucket. However, Strichik admitted that he may have told a Glidden representative, in a recorded statement given over the telephone, that he noticed no broken handle; Strichik claims that he does not recall the exact substance of that recorded statement.[4] There was no witness to Baker’s accident, and no one, other than Baker or Strichik, ever saw the paint bucket that allegedly caused Baker’s injury.
It is undisputed that the bucket, which Baker claims was unreasonably dangerous and caused his injury, was evidence of paramount importance. Baker knew when he left the bucket after the accident that Strichik would use the contents and discard it; Baker had the authority and the opportunity to instruct the staff at Olympiad Apartments to preserve the allegedly defective bucket. Letica and Glidden were deprived of the opportunity to examine the paint bucket. For this reason, questions such as whether the bucket handle was defectively fragile or had been bent through misuse, or whether the bucket ear which held the handle was defectively thin or whether it had been torn or broken during shipment or storage, cannot be an *1146 swered. Following the precedent set in Murray, we conclude, in light of the inconsistent version of events related by both Baker and Strichik; the importance of the bucket as evidence; and Baker’s knowledge of the likely consequences "of leaving the bucket in the storage room, that the record contains sufficient evidence to support the trial court’s charge on spoliation.
Further, even if the trial court erred in charging the jury on the spoliation-of-evidence doctrine, Baker has not demonstrated that he was prejudiced by the instruction. Letica, the bucket manufacturer, focused its primary defense on the fact that it had manufactured more than 25 million of the 5100 series buckets[5] over the four-to-five year period before Baker’s accident, and that Baker’s accident was the only incident of reported handle failure that caused an injury. Although counsel for Letica referred to the fact that the allegedly defective bucket had not been produced at trial, the bucket’s absence was not the primary emphasis of Letica’s defense or of Glidden’s defense. Baker’s attorney acknowledged this fact in the following opening remarks he made to the jury:
“Defendant’s biggest defense is this. Look, we — again, just trying to be forthright and honest with you. Look, we manufacture many of these buckets. And you know what? We’ve only had one incident — one incident, Mr. Baker. We manufacture millions of these buckets, and we’ve only had one incident. That’s their defense.
“And I’m going to make a pledge to you. If, after all the evidence has come in, if you think that the bail[6] has failed only one time, I’m not going to hold it against you if you rule for the defendant.”
During the deliberations the jury asked the trial court for a copy of the accident report that was filed on behalf of Baker after he sustained his foot injury. Because the report itself had not been admitted into evidence, the trial court advised the jury that it could not consider the actual accident-report document. At this time, the jury also requested the trial court to redefine “negligence” and “wantonness,” and the trial court repeated its instruction on these theories. The jurors later asked whether there could be wantonness without negligence and the court replied in the affirmative. The jurors never questioned the trial court about the spoliation doctrine. In view of these circumstances, combined with the scarcity of evidence in the record to support Baker’s claims against the defendants, we conclude that the instruction on spoliation had no prejudicial effect on the trial of this case.
The judgment of the trial court is affirmed.
OPINION OF SEPTEMBER 22, 2000, WITHDRAWN, OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY, J., dissents.

. Baker's credibility was also brought into question when he admitted that, in 1981, he had been convicted of mail fraud.

. Because negligent and wanton delivery and placement of the paint buckets were the only claims Baker asserted against Rogers, the summary judgment left no claims pending against Rogers; other counts remained pending as to Glidden.

. The accident report was not admitted into evidence.

. The recorded statement was not allowed in evidence because it was not provided to Baker during discovery.

. This was the type of bucket that allegedly injured Baker.

. This term is used to refer to the bucket handle.